Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/05/2021 09:08 AM CST

State of Nebraska, appellee, v.
Timothy J. Clausen, appellant.

___ N.W.2d ___

Filed December 11, 2020.    No. S-20-109.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Trial: Evidence: Appeal and Error.** A trial court's determination of the relevancy and admissibility of evidence must be upheld in the absence of an abuse of discretion.

3. **Trial: Evidence.** Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion of the trial court.

4. **Appeal and Error.** Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error.

5. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

6. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

7. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

8. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

9. **Self-Incrimination: Juries: Rules of Evidence.** Neb. Rev. Stat.
§ 27-513(2) (Reissue 2016) makes it clear that courts must avoid hav-
ing witnesses claim privilege in the presence of the jury whenever
practicable.

10. **Self-Incrimination.** A witness may not testify voluntarily about a sub-
ject and then invoke the privilege against self-incrimination when ques-
tioned about the details.

11. **Criminal Law: Witnesses: Testimony.** When a defendant's witness
testifies about a criminal action which is central to the defendant's guilt,
but then refuses to answer the State's questions challenging the witness'
assertion, the testimony may be stricken.

12. **Verdicts: Juries: Appeal and Error.** Harmless error review ultimately
looks to the basis on which the trier of fact actually rested its verdict;
the inquiry is not whether in a trial that occurred without the error a
guilty verdict would surely have been rendered, but, rather, whether the
actual guilty verdict rendered in the questioned trial was surely unattrib-
utable to the error.

13. **Trial: Evidence: Appeal and Error.** An appellate court reviews the trial
court's conclusions with regard to evidentiary foundation and witness
qualification for an abuse of discretion.

14. **____: ____: ____.** The admission or exclusion of evidence is a matter
left largely to the sound discretion of the trial court, whose ruling will
be upheld absent an abuse of discretion.

15. **Appeal and Error.** Plain error may be found on appeal when an error
is unasserted or uncomplained of at trial, but plainly evident from the
record, prejudicially affects a litigant's substantial right and, if uncor-
rected, would result in damage to the integrity, reputation, and fairness
of the judicial process.

16. **Trial.** When there are outbursts of emotion in the courtroom, it is within
the sound discretion of the trial court to deal with them in such a manner
as to best preserve the judicial atmosphere and ensure a fair and impar-
tial trial for the defendant.

17. **Witnesses: Testimony.** Striking the testimony of a witness is a drastic
remedy, which is not to be lightly done.

18. **Courts.** Nebraska courts, through their inherent judicial power, have the
authority to do all things reasonably necessary for the proper administra-
tion of justice.

19. **Jury Instructions: Proof: Appeal and Error.** To establish reversible
error from a court's refusal to give a requested instruction, an appel-
lant has the burden to show that (1) the tendered instruction is a correct
statement of the law, (2) the tendered instruction is warranted by the

evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

20. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and, if taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

21. ____: ____. A jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous.

22. **Criminal Law: Rules of Evidence.** The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.

23. **Constitutional Law: Criminal Law: Trial.** The right to present a defense is not unqualified and is subject to countervailing public interests such as preventing perjury and investigating criminal conduct.

24. **Trial: Words and Phrases: Appeal and Error.** Structural errors are errors so affecting the framework within which the trial proceeds that they demand automatic reversal.

25. ____: ____: ____. Structural errors are distinguished from trial errors, which generally occur during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether they were harmless beyond a reasonable doubt.

26. **Sentences.** When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

27. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

28. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

29. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

30.  ____: ____. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

31.  ____: ____. The two prongs of the ineffective assistance of counsel test—deficient performance and prejudice—may be addressed in either order.

32.  **Constitutional Law: Criminal Law: Witnesses: Self-Incrimination: Depositions.** Where a witness becomes unavailable due to his assertion of Fifth Amendment privilege, such witness' prior deposition testimony is admissible as substantive evidence, given that the deposition had been taken in compliance with the law and in the course of the same criminal proceeding, and that the opposing party had adequate opportunity in the witness' deposition to examine the witness with similar, if not exact, interest and motive on matters relative to the case.

33.  **Witnesses: Testimony: Self-Incrimination: Depositions.** If a witness refuses to answer questions that are so closely related to the subject of the case that the entire testimony of the witness should be stricken, opposing counsel has been deprived of an adequate opportunity to examine the witness during the deposition.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Christopher Eickholt, of Eickholt Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Cassel, J.

## I. INTRODUCTION

Timothy J. Clausen appeals from sentences imposed pursuant to jury convictions related to a prison escape. Clausen primarily argues that rulings—striking his testimony for repeated misconduct and his witness' testimony for refusing cross-examination, and excluding other evidence—prevented him from presenting a duress defense. Because his own actions, his

witness' choice, and the inadmissibility of his other evidence fundamentally crippled his defense, his claims lack merit. Finding no reversible error or abuse of discretion, we affirm.

## II. BACKGROUND

For Clausen's role in a 2016 prison escape from the Lincoln Correctional Center in Lincoln, Nebraska, he was charged with three felonies: escape, theft by unlawful taking, and operating a motor vehicle to avoid arrest. Clausen and Armon Dixon escaped the facility by hiding in a prison laundry truck with the assistance of another inmate, Brandon Williams. After the escape, a law enforcement officer discovered the inmates in a Lincoln parking lot. Before the officer could apprehend them, the inmates stole a vehicle and fled. The officer recognized Clausen as the person driving the vehicle. Law enforcement pursued the stolen vehicle, but called off the pursuit after it was deemed unsafe. After the pursuit ended, two people witnessed Clausen crash the stolen vehicle into a parked vehicle, from which stolen vehicle the inmates ran on foot. In the following days, Clausen and Dixon were both arrested.

After Clausen was arrested, law enforcement officers interviewed him three times to ascertain how he and Dixon escaped. During each interview, the officers read Clausen his *Miranda* rights, which he waived. Clausen admitted to escaping the facility and described the events surrounding his escape. During these interviews, Clausen did not claim to have escaped under duress.

After being deemed competent to stand trial by two separate medical professionals, Clausen pled not guilty and proceeded to a jury trial. Clausen intended to argue that he had escaped only because of duress from Dixon and that it had been Dixon, not Clausen, who had taken and driven the stolen vehicle during their escape.

Before trial, the State moved to exclude the testimony of Clausen's two witnesses: Dixon and Bentley Buckner, Clausen's cellmate in prison. During a deposition, Dixon admitted

to threatening and coercing Clausen during the planning and commission of the escape and to driving the escape vehicle. At trial, outside the presence of the jury, Dixon repeated his deposition testimony. However, because the State would not give him immunity for his testimony, Dixon invoked his Fifth Amendment privilege and refused to testify about a matter the court deemed sufficiently related to Clausen's defense—namely, how the men had obtained a cell phone and drugs they used during their escape. Consequently, the court sustained the State's motion to exclude Dixon from testifying, reasoning that Nebraska law discourages a court from allowing a witness to invoke his Fifth Amendment privilege in the presence of the jury. Clausen did not request the court to partially strike Dixon's testimony related to the subjects on which he invoked privilege and to allow him to continue to testify regarding other matters.

The State also moved to exclude Buckner from testifying that Clausen told Buckner that Dixon was threatening him, Buckner saw Dixon possess a knife while near Clausen over 2 months before their escape, and Buckner believed Clausen's escape was the result of duress based on Dixon's power and authority in the prison system. The court ultimately sustained the State's motion, determining that Buckner's testimony would be inadmissible because it was based on hearsay, was too remote in time to aid Clausen's duress defense, and was based on speculation about Clausen's state of mind.

At trial, Clausen took the stand in his own defense. He did not call any other witnesses. However, before Clausen took the stand, he had an outburst in front of the jury where he asked the court to "let the jury know . . . why my . . . witnesses was denied . . . and why . . . my witnesses . . . is not allowed to come into court . . . and testify. . . . Why can't Armon Dixon come testify . . . like I want him to[?]" After the jury was excused, the court warned Clausen that if he had another outburst while testifying, he would be waiving his right to testify and his testimony would be stricken. On cross-examination,

Clausen again became upset that Dixon and Buckner were not allowed to testify. Despite the court's earlier warnings, he had another outburst.

During a recess, the court informed Clausen that because he had refused to subject himself to a complete cross-examination, he had forfeited his right to testify. After the recess, the court informed the jury that because of Clausen's conduct it was to disregard Clausen's testimony in its entirety and his testimony was stricken from the record. However, Clausen was allowed to remain in the courtroom for closing arguments. Despite defense counsel's objection, the court refused to give a no-inference instruction based on Clausen's right not to testify because, the court reasoned, Clausen did testify and his lack of testimony on the record was the result of his conduct rather than an invocation of his Fifth Amendment privilege.

The jury convicted Clausen of all three charges. Following an enhancement hearing, the court found Clausen to be a habitual criminal and sentenced him to a combined consecutive term of 80 to 140 years' imprisonment—40 to 60 years' imprisonment for escape, 20 to 40 years' imprisonment for theft by unlawful taking, and 20 to 40 years' imprisonment for operating a motor vehicle to avoid arrest. Although neither the oral pronouncement nor the written sentencing judgment contains any reference to credit for time served, we have not been directed to any facts in the record showing that any credit was due.

Although Clausen initially failed to file a direct appeal, his right to appeal was reinstated by postconviction relief. Clausen then filed a timely appeal, which we moved to our docket.[1]

## III. ASSIGNMENTS OF ERROR

Clausen assigns 14 errors in his appeal, which he consolidates into 6 overarching arguments. Clausen assigns, consolidated, that the district court erred by (1) excluding the

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

testimonies of Dixon and Buckner; (2) striking Clausen's entire testimony and instructing the jury to disregard it; (3) failing to give a no-inference jury instruction; (4) depriving Clausen of his right to present a defense, thereby violating his constitutional rights and creating structural error; and (5) imposing excessive sentences.

Clausen also assigns that he received ineffective assistance of counsel because his trial counsel failed to (1) object to nonrelevant questioning of Dixon, (2) disclose Buckner as a witness in a timely manner, (3) offer out-of-court testimony of Dixon, (4) ensure Clausen received a proper mental evaluation, (5) subpoena the police officer who conducted a photographic lineup, (6) offer Clausen's complete interview with investigators, (7) object or seek corrective instructions regarding the State's improper opening statement commentary, (8) sufficiently cross-examine Williams, and (9) preserve Clausen's motions to suppress for appeal.

## IV. STANDARD OF REVIEW

[1-3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[2] A trial court's determination of the relevancy and admissibility of evidence must be upheld in the absence of an abuse of discretion.[3] Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion of the trial court.[4]

[4] Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error.[5]

---

[2] *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020).

[3] *Id.*

[4] *Id.*

[5] *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012).

[5] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[6]

[6] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[7]

[7,8] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.[8] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[9]

## V. ANALYSIS

### 1. Exclusion of Defense Witness Testimony

Clausen first argues that the trial court erred in prohibiting Clausen from calling Dixon and Buckner as witnesses at trial. They were his key witnesses regarding duress. Clausen did not call any other witnesses to establish that defense.

Because judicial discretion was involved in these rulings, we review them for an abuse of discretion. We address each witness separately, because the court assigned different reasons for the respective rulings.

### (a) Dixon

The State filed a motion in limine seeking to bar Dixon from testifying. In addressing the State's motion, the court held a hearing outside the jury's presence where the State questioned Dixon about his planned testimony.

---

[6] *State v. Paez*, 302 Neb. 676, 925 N.W.2d 75 (2019).

[7] *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020).

[8] See *id*.

[9] *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018).

At the hearing, Dixon stated that he would be willing to "testify about what happened, and what went down . . . I ain't got no problem with doing that." However, Dixon invoked privilege when asked how he obtained the phone and drugs that contributed to the escape. The State argued that allowing Dixon to testify on behalf of Clausen and to invoke privilege on cross-examination would violate Neb. Rev. Stat. § 27-513(2) (Reissue 2016). Clausen countered that Dixon would only invoke privilege on collateral matters and that because he was critical to Clausen's defense, Dixon should be allowed to testify.

The court ruled that Dixon would not be allowed to testify. The court explained that Dixon's refusal to answer questions on cross-examination regarding events so closely related to the commission of the crime in this case would force the court to strike Dixon's entire testimony, because allowing Dixon to testify only for his testimony to be stricken when he invoked privilege would violate § 27-513(2). Clausen argues the court erred in its ruling.

[9] Section 27-513(2) makes it clear that courts must avoid having witnesses claim privilege in the presence of the jury whenever practicable.[10] The statutory subsection states: "In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury."[11] The purpose of that subsection is to prevent the jury from drawing an unfavorable inference from a witness' assertion of a privilege.[12]

Section 27-513(2) does not bar a witness from ever invoking privilege in front of a jury.[13] However, ""'[a]bsent extraordinary circumstances, trial courts should exercise their discretion to forbid parties from calling witnesses who, when called,

---

[10] See *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015).

[11] § 27-513(2).

[12] *Draper, supra* note 10.

[13] See *id.*

will only invoke a privilege."'"[14] Therefore, the trial court must determine whether the witness intends to refuse to testify and decide whether it would be prejudicial to the opposing party for the witness to be called in front of the jury.[15] At the same time, the trial court may also consider whether the failure to call the witness, despite the refusal to testify, would unfairly prejudice the party calling the witness.[16]

[10] In making its prejudice determination, the trial court must also consider the extent to which a witness' potential testimony would be excluded by the witness invoking privilege.[17] It is well established that a witness may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details.[18] The privilege is waived for the matters to which the witness testifies, and "the scope of the 'waiver is determined by the scope of relevant cross-examination.'"[19] Therefore, if the witness himself elects to waive his privilege, as he may doubtless do, since the privilege is for his protection and not for that of other parties, and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure; where incriminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details.[20]

Because a witness cannot use the protections of the Fifth Amendment to distort the facts by selecting a stopping place

---

[14] *Id.* at 789, 857 N.W.2d at 344 (quoting *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006)).

[15] See *Draper, supra* note 10.

[16] See *id.*

[17] See *id.*

[18] See *Mitchell v. United States*, 526 U.S. 314, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999).

[19] *Id.*, 526 U.S. at 321 (quoting *Brown v. United States*, 356 U.S. 148, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958)).

[20] See *Rogers v. United States*, 340 U.S. 367, 71 S. Ct. 438, 95 L. Ed. 344 (1951).

for his or her testimony, either the witness must invoke privilege at the outset of the questioning regarding an incriminating subject or the court will strike the distorted testimony.[21] While this court has never addressed the extent to which a court that has a witness who has invoked privilege must strike his or her testimony, many courts embrace the approach taken in *United States v. Cardillo*.[22] There, the court explained:

[Not] every refusal to answer by a witness, claiming his constitutional right against self-incrimination, requires the striking of his testimony or a part thereof. There would appear to be at least three categories to be considered. The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice. The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose. As to the first and second categories suggested, whether all or a part of the testimony should be stricken, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances. Unsatisfactory as such a generality is for a trial judge who is required to give instantaneous rulings on close questions and who does not enjoy the luxury of reflective appellate deliberation, any set of specific dogmas would be even more unworkable.[23]

---

[21] See, e.g., *Mitchell, supra* note 18.

[22] *United States v. Cardillo*, 316 F.2d 606 (2d Cir. 1963).

[23] *Id.* at 613.

While the witness invoking privilege in *Cardillo* was testifying on behalf of the State, courts have applied *Cardillo* in the inverse when a witness is testifying on behalf of a defendant.[24] Important public policy protects even the prosecution's right to fair trials and the pursuit of truth, so that a similar principle should govern whether the recalcitrant witness was offered by the prosecution or by the defendant.[25] A witness may not say enough to exonerate the defendant without implicating himself, and the prosecutor is entitled to closely examine a witness to expose to the fact finder the witness' falsification.[26]

[11] We adopt the *Cardillo* approach. When a defendant's witness testifies about a criminal action which is central to the defendant's guilt, but then refuses to answer the State's questions challenging the witness' assertion, the testimony may be stricken.[27] Therefore, a Nebraska court determining whether to exclude a witness pursuant to § 27-513 must consider the interrelatedness between the topic invoking the witness' Fifth Amendment protections and his or her cumulative testimony. If a court must strike the witness' entire testimony, then clearly the witness must be excluded pursuant to § 27-513.

Here, Dixon would have testified to the inner workings of the escape, which is central to this case. Dixon wished to testify about how he planned the entire escape and forced Clausen to escape with him. However, he refused to allow the State to cross-examine the validity of his assertion that he planned the escape.

During Dixon's deposition, Dixon admitted to selling drugs to raise money to purchase the phone that was used to coordinate the escape. He testified: "I sold a lot of drugs,

---

[24] See *U.S. v. Crews*, 856 F.3d 91 (D.C. Cir. 2017).

[25] *Lawson v. Murray*, 837 F.2d 653 (4th Cir. 1988).

[26] See *id.*

[27] See, *U.S. v. Davis*, 690 F.3d 912 (8th Cir. 2012), *cert. granted and judgment vacated on other grounds* 570 U.S. 913, 133 S. Ct. 2852, 186 L. Ed. 2d 903 (2013); *U.S. v. McKneely*, 69 F.3d 1067 (10th Cir. 1995).

man. I had a lot of guards in my pocket. I had a lot of inmates that would do whatever I told them to do[.]" Once he purchased the phone, he "made some calls, set up some stuff" regarding the escape. Dixon refused to answer the State's questions when asked for the names of the guards and inmates who smuggled in the phone and drugs. The State was entitled to ask these questions to discover other witnesses who could refute the validity of Dixon's statements. During the hearing at trial, Dixon again refused to answer the State's questions about the phone and drugs.

Dixon's testimony falls into the first *Cardillo* category. Dixon's selling drugs to purchase the phone and then using it to plan the escape were closely related to the commission of the crime at issue—the escape. While this court respects Dixon's interest in not incriminating himself, Dixon's decision to invoke privilege and refuse to answer how he obtained the phone and drugs frustrated the State's cross-examination and denied him the opportunity to testify on Clausen's behalf.

The court did not abuse its discretion in barring Dixon from testifying, because Dixon's testimony did not warrant being only partially stricken. Dixon's refusal to answer questions on cross-examination was not connected solely with one phase of the case. Dixon claimed to have planned the entire escape and forced Clausen to escape with him. Testimony regarding who planned the escape and took preparatory actions was key to Clausen's duress defense, saturating all phases of this case. Dixon could not invoke privilege without subjecting his entire testimony to being stricken. Under these circumstances, we cannot say that the court's decision to strike all of Dixon's testimony was clearly untenable.

[12] Even if we assume that Dixon's testimony would have been regarding a collateral matter, the court's error would have been harmless.[28] Harmless error review ultimately looks to

---

[28] See *United States v. Lord*, 711 F.2d 887 (9th Cir. 1983). See, also, *U.S. v. Negrete-Gonzales*, 966 F.2d 1277 (9th Cir. 1992).

the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[29] The court's potential error was harmless, because Clausen could not prove a duress defense.

For a prisoner to utilize a duress defense based on threat of physical harm by another prisoner, the prisoner must report immediately to the proper authorities when he attains a position of safety from the threat.[30] In order for Clausen to have a duress defense, Clausen would have needed to turn himself back into custody after he separated from Dixon during the escape. Clausen instead remained in hiding until law enforcement discovered him in a house and arrested him, invalidating his duress defense. To the extent Dixon would have testified that he was the one driving the vehicle, the State offered evidence refuting this assertion.

### (b) Buckner

The State sought to exclude Buckner's testimony because Clausen did not disclose Buckner as a witness in a timely manner. The court ruled instead to exclude Buckner because his testimony was (1) based on inadmissible hearsay, (2) too remote in time to be admissible evidence for Clausen's duress defense, and (3) based on speculation. Clausen assigns that the trial court erred in this order.

[13,14] An appellate court reviews the trial court's conclusions with regard to evidentiary foundation and witness qualification for an abuse of discretion.[31] The admission or exclusion of evidence is a matter left largely to the sound

---

[29] *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019).

[30] *State v. Reed*, 205 Neb. 45, 286 N.W.2d 111 (1979).

[31] *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002).

discretion of the trial court, whose ruling will be upheld absent an abuse of discretion.[32]

Buckner would have testified that Clausen told him that Dixon was threatening him and saying that he would kill his loved ones if Clausen did not help him escape. This testimony is hearsay because it is a statement made out of court by Clausen offered to prove that Dixon was in fact threatening Clausen.[33] Buckner's hearsay testimony was inadmissible.

Additionally, Buckner would have testified that he saw Dixon threaten Clausen with a knife more than 2 months before the escape. A prisoner claiming he escaped under fear of impending death or serious bodily injury at the hands of another prisoner must prove that the injury was immediately impending.[34] Buckner's testimony would have been inadmissible because the witnessed threat was too remote from the time of escape.

Finally, Buckner's belief that Clausen escaped as the result of duress based on Dixon's power and authority in the prison system is speculation.[35] Therefore, Buckner's testimony was inadmissible at trial. We see no abuse of discretion in the court's exclusion of Buckner's testimony.

## 2. Exclusion of Clausen's Testimony

Clausen next argues that the court erred in striking his entire testimony and instructing the jury to disregard it. Clausen did not object to the court's actions at trial, failing to preserve this issue for appeal.[36] However, Clausen argues that the court committed plain error by not finding Clausen in contempt before sanctioning Clausen for his actions at trial and that

---

[32] *State v. Irish*, 223 Neb. 578, 391 N.W.2d 137 (1986).

[33] See Neb. Rev. Stat. § 27-801(3) (Reissue 2016).

[34] See *Reed, supra* note 30.

[35] See, generally, Neb. Rev. Stat. § 27-701 (Reissue 2016).

[36] See *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

the court should have imposed an alternative penalty instead of a complete strike of his testimony.

[15] Under most circumstances, we require a party to object to a perceived error by a trial court in order to preserve that issue for appeal.[37] Conversely, plain error may be found on appeal when an error is unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[38]

The U.S. Supreme Court in *Illinois v. Allen*[39] articulated three principles regarding courtroom decorum. It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings.[40] The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated.[41] Trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.[42]

[16-18] The principles articulated in *Allen* are consistent with Nebraska law. When there are outbursts of emotion in the courtroom, it is within the sound discretion of the trial court to deal with them in such a manner as to best preserve the judicial atmosphere and ensure a fair and impartial trial for the defendant.[43] Striking the testimony of a witness is a drastic remedy, which is not to be lightly done.[44] However,

---

[37] See *id.*

[38] *Id.*

[39] *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970).

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *State v. Scott*, 200 Neb. 265, 263 N.W.2d 659 (1978).

[44] *Davis, supra* note 27; *Murray, supra* note 25.

Nebraska courts, through their inherent judicial power, have the authority to do all things reasonably necessary for the proper administration of justice.[45]

Here, we see no plain error. The court warned Clausen that it would strike his testimony and instruct the jury to disregard it if he had another outburst. Clausen's disruptive outburst was a flagrant disregard of the court's repeated warnings and was an attempt to taint the mind of the jury. The court acted within its power to ensure a fair and impartial trial.

### 3. Jury Instruction

Clausen assigns that the trial court erred in not giving a no-inference jury instruction. Although not precise, a fair reading of the record shows the court understood Clausen to be requesting a pattern jury instruction. It states: "The defendant has an absolute right not to testify. The fact that the defendant did not testify must not be considered by you as an admission of guilt and must not influence your verdict in any way."[46] The district court refused the instruction, explaining that Clausen "did testify and that his own conduct eviscerated that testimony." Unlike the previous assignment of error, Clausen objected to the court's ruling, preserving this issue for appeal.

[19-21] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[47] All the jury instructions must be read together, and, if taken as a whole, they correctly state the law, are not misleading, and adequately

---

[45] *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

[46] NJI2d Crim. 9.4. See *Kreikemeier, supra* note 45.

[47] *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016).

cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[48] A jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous.[49]

Here, we find that the jury was properly instructed. Clausen testified in front of the jury, and his testimony was stricken only because of his conduct. Under these circumstances, the pattern instruction would have incorrectly stated the events at trial and misled the jury. We agree with the trial court and find no error.

### 4. Right to Present Defense

Clausen argues that the court "stripped away" his entire defense because it barred Clausen from calling his two witnesses—Dixon and Buckner—and also struck his own testimony from the record.[50] Clausen claims the court's actions denied him his right to present a complete defense as guaranteed by the U.S. Constitution and *Rock v. Arkansas*,[51] violating his 14th Amendment due process rights and his 6th Amendment Confrontation Clause rights—which he characterized as structural error requiring automatic reversal. These claims will each be addressed in turn.

### (a) Due Process and Confrontation Clause

[22,23] We have stated that whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.[52] However, the accused does not have an unfettered

---

[48] See *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

[49] *Id.*

[50] Brief for appellant at 43.

[51] *Rock v. Arkansas*, 483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987).

[52] *State v. Said*, 306 Neb. 314, 945 N.W.2d 152 (2020).

right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.[53] The right to present a defense is not unqualified and is subject to countervailing public interests such as preventing perjury and investigating criminal conduct.[54]

Clausen was entitled to present a complete defense to counter the State's charges against him. However, Clausen did not have an unfettered right to offer inadmissible testimony or disregard the court's instruction. Clausen's inability to present witnesses that could provide admissible testimony pursuant to the Nebraska Evidence Rules and his disruptive outbursts, not the court, "stripped away" his defense. Clausen's due process and confrontation rights were not violated.

### (b) Structural Error

[24,25] Structural errors are errors so affecting the framework within which the trial proceeds that they demand automatic reversal.[55] They are distinguished from trial errors, which generally occur "'during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt.'"[56]

The U.S. Supreme Court limited structural errors to a few very specific categories—total deprivation of counsel, trial before a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, denial of the right to self-representation at trial, and denial of the right to a public trial.[57] The fact that the error in a case was

---

[53] *Id.*

[54] *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

[55] *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012).

[56] *Id.* at 64, 815 N.W.2d at 905 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)).

[57] *Abram, supra* note 55. See *Fulminante, supra* note 56.

a constitutional error does not in itself mean that it was struc-
tural error. [58]

The assigned errors Clausen asserts fall in the category
of trial errors rather than structural errors. The trial court's
determination to exclude Clausen's witnesses and strike his
testimony occurred during the presentation of the case to the
jury. His claims do not fall within the limited set of aforemen-
tioned structural errors established by the U.S. Supreme Court.
Clausen's trial does not warrant an automatic reversal.

### 5. EXCESSIVE SENTENCES

Clausen also argues that the court abused its discretion
by imposing excessive sentences. Clausen claims the court
made no meaningful factual findings to justify the sentence or
any substantive factors relating to his prior criminal history.
Clausen does not address the court's finding that he was a
habitual criminal.

[26,27] As stated above, we review a sentence imposed
within statutory limits for an abuse of discretion. [59] When
imposing a sentence, a sentencing judge should customarily
consider the defendant's (1) age, (2) mentality, (3) education
and experience, (4) social and cultural background, (5) past
criminal record or record of law-abiding conduct, and (6)
motivation for the offense, as well as (7) the nature of the
offense and (8) the amount of violence involved in the com-
mission of the crime. [60] The appropriateness of a sentence is
necessarily a subjective judgment and includes the sentencing
judge's observation of the defendant's demeanor and attitude
and all the facts and circumstances surrounding the defend-
ant's life. [61]

---

[58] See *Abram, supra* note 55.

[59] See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

[60] *Id.*

[61] *Id.*

We have reviewed Clausen's sentences and conclude that they were not excessive. The court determined Clausen was a habitual criminal and sentenced him on all three convictions pursuant to the habitual criminal statutory guidelines.[62] The court did not abuse its discretion.

### 6. Ineffective Assistance of Counsel

Finally, Clausen presents a plethora of ineffective assistance of counsel claims for this court to consider. Clausen's counsel on direct appeal is different from his trial counsel. We conclude that the record is sufficient to address all of the assignments of error regarding ineffectiveness and that all lack merit.

[28-31] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[63] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[64] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[65] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[66] The two prongs of the ineffective assistance of counsel test—deficient performance and prejudice—may be addressed in either order.[67]

### (a) Questioning of Dixon

Clausen claims that his trial counsel did not object on relevancy when the State questioned Dixon regarding the escape

---

[62] See Neb. Rev. Stat. § 29-2221 (Reissue 2016).

[63] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[64] *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020).

[65] *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020).

[66] *Id.*

[67] See *State v. Privett*, 303 Neb. 404, 929 N.W.2d 505 (2019).

preparation at a hearing. The State asked Dixon for the names of the individuals who provided him with the phone and drugs that aided in the escape. However, Clausen misstates the record. Clausen's trial counsel repeatedly objected to the relevancy, and the court overruled the objections. Trial counsel was not ineffective on this issue.

### (b) Untimely Disclosure of Buckner

Clausen moves on to claim his trial counsel was ineffective by failing to disclose Buckner as a witness in a timely manner. However, because the court did not err in excluding Buckner's testimony on separate evidentiary grounds, Clausen did not suffer any prejudice from this untimely witness disclosure. This claim lacks merit.

### (c) Dixon's Deposition

[32] Clausen also claims that his trial counsel was ineffective by failing to introduce Dixon's deposition at trial, because he was an unavailable witness. Where a witness becomes unavailable due to his assertion of Fifth Amendment privilege, such witness' prior deposition testimony is admissible as substantive evidence, given that the deposition had been taken in compliance with the law and in the course of the same criminal proceeding, and that the opposing party had adequate opportunity in the witness' deposition to examine the witness with similar, if not exact, interest and motive on matters relative to the case.[68] But a witness' refusal to answer questions during cross-examination of a deposition may deprive the opposing counsel of an adequate opportunity to examine the witness during the deposition.[69]

---

[68] See *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997), *disapproved on other grounds, State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999). See, also, Neb. Rev. Stat. § 27-804(2)(a) (Reissue 2016).

[69] See, e.g., *State v. Privat*, 251 Neb. 233, 556 N.W.2d 29 (1996); *Burke v. Harman*, 6 Neb. App. 309, 574 N.W.2d 156 (1998).

[33] To determine whether opposing counsel has been deprived of the opportunity to examine a witness during cross-examination, Nebraska courts apply the *Cardillo* approach discussed earlier.[70] If a witness refuses to answer questions that are so closely related to the subject of the case that the entire testimony of the witness should be stricken, opposing counsel has been deprived of an adequate opportunity to examine the witness during the deposition.[71] The incomplete deposition cannot be admitted as substantive evidence at trial.[72]

Dixon deprived the State of an adequate opportunity to cross-examine him. At his deposition, Dixon refused to answer questions regarding how he obtained the phone and drugs that aided in the escape. The State's questioning was closely related to the commission of the escape. Dixon's entire testimony would have been stricken in accordance with *Cardillo* if Clausen would have submitted Dixon's deposition at trial, and therefore, the record shows that Clausen was not prejudiced by trial counsel's conduct.

Even if Dixon's deposition should have been allowed into evidence, the record shows that Clausen was not prejudiced by trial counsel's conduct. As discussed earlier, Clausen could not prove a duress defense because he failed to surrender himself to authorities.

### (d) Mental Evaluation
### of Clausen

Clausen next claims that his trial counsel was ineffective because trial counsel did not ensure that Clausen received a proper mental evaluation to determine whether he was competent to stand trial. By request of his trial counsel, Clausen received two evaluations from separate medical professionals—a forensic psychiatrist and a licensed psychologist. Both professionals concluded Clausen was feigning his mental

---

[70] See, e.g., *Cardillo, supra* note 22; *Harman, supra* note 69.

[71] See, *Cardillo, supra* note 22; *Harman, supra* note 69.

[72] See *id.*

issues. Clausen argues that these evaluations were cursory and that he was never properly assessed.

This court concludes that the performance of Clausen's trial counsel was not deficient. Trial counsel identified the potential competency issue and requested an evaluation. After the court deemed Clausen competent to stand trial, trial counsel reaffirmed his commitment to his client by requesting another mental examination.

Because both professionals independently reached the same conclusion, trial counsel exercised the judgment of a lawyer with ordinary training and skill in criminal law in not requesting further mental evaluations. Even if this court were to find that trial counsel's performance was deficient, there is not a reasonable probability that an additional evaluation would have resulted in Clausen's being found incompetent to stand trial. Clausen's trial counsel was not ineffective on this issue.

### (e) Failure to Subpoena
### Police Officer

Clausen also claims that trial counsel was ineffective because he failed to subpoena or compel the police officers who conducted a photographic lineup. Clausen argues his trial counsel's actions resulted in the overruling of his motion to suppress evidence of the photographic lineup. In reality, the court sustained his motion at a hearing and no evidence of the photographic lineup was admitted into evidence. This claim has no merit.

### (f) Failure to Offer
### Complete Interview

Clausen next claims his trial counsel should have presented the jury with Clausen's entire recorded interviews with law enforcement after his arrest, arguing that it gave the jury an inaccurate view of Clausen's role in the escape. The recordings contained information highly prejudicial to Clausen such as the offense Clausen was imprisoned for, his participation in various crimes, and his overall criminal history. The State

presented a redacted version to ensure the jury did not hear this highly prejudicial information. The record establishes that Clausen suffered no prejudice by the exclusion of this highly prejudicial information.

### (g) Opening Statement

Clausen moves on to claim that his trial counsel was ineffective by failing to object to or ask the district court to take any corrective action for the State's improper commentary in opening statements. The State mentioned in its opening statement that Clausen was found "in a bathroom with a firearm" when he was arrested. The parties agree that this statement was improper because it was in violation of a pretrial order by the court.

In *State v. Iromuanya*,[73] we addressed a similar situation where the State made improper comments during opening statements. We reasoned that the State's commentary was not prejudicial because (1) the trial court had orally instructed jurors before the trial that attorneys' statements and arguments were not evidence, (2) the statements represented short moments in a long trial during which many other witnesses testified about the critical issues in the case, and (3) the trial court's written instructions informed the jurors that they must not decide the case based on sympathy or prejudice.[74]

We find *Iromuanya* instructive in this case. Here, the court reminded the jury that "opening statements by counsel are not evidence"; multiple witnesses testified during a long trial about critical issues of the case, which did not include the possession of a firearm; and the jury instructions reiterated that statements and arguments by counsel were not evidence. The State never offered evidence that Clausen possessed a firearm at the time of his arrest. In light of these circumstances, the record shows that Clausen suffered no prejudice.

---

[73] *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011).

[74] See *id.* See, also, *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019) (discussing *Iromuanya, supra* note 73).

(h) Cross-Examination of Williams

Clausen continues his ineffective assistance of counsel assignment by arguing that his trial counsel was ineffective in his cross-examination of Williams. Clausen claims that his counsel failed to impeach Williams' credibility by (1) establishing Williams was a felon under Neb. Rev. Stat. § 27-609 (Reissue 2016), (2) highlighting Williams' motivation for testifying under his plea agreement, and (3) questioning Williams about a suicide attempt he made immediately after Clausen and Dixon escaped from prison.

Clausen misstates the record—his trial counsel did, in fact, impeach Williams for being a felon. Section 27-609(1) allows a party to admit evidence of a conviction resulting in an imprisonment in excess of 1 year for purposes of attacking the credibility of a witness. The statute goes on to state that "[e]vidence of a conviction . . . is not admissible if a period of more than ten years has elapsed since the date of such conviction or of the release of the witness from confinement, whichever is the later date."[75] After the conviction is established, "'the inquiry must end there, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent in prison as a result thereof.'"[76]

Trial counsel asked Williams: "I know that you are in the penitentiary but tell me, have you had any felony convictions in the last ten years?" Williams ultimately responded: "No. Just what I have now." Trial counsel utilized § 27-609 and attacked Williams' credibility for being a felon. Trial counsel's performance was not deficient.

Next, Williams testified in his direct examination that he was charged with two counts of escape because he helped Clausen and Dixon escape. Williams explained that in exchange for his testimony, the State dropped one of those counts. Trial

[75] § 27-609.

[76] *State v. Castillo-Zamora*, 289 Neb. 382, 388, 855 N.W.2d 14, 22 (2014) (quoting *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987)).

counsel need not ask redundant questions on information already established on direct examination. The jury was aware of Williams' motivation to testify in this case, and therefore, Clausen suffered no prejudice.

Lastly, Clausen's trial counsel did not provide ineffective assistance of counsel by not questioning Williams regarding his suicide attempt after Clausen and Dixon escaped from prison, because that evidence was inadmissible. Parties can only ask witnesses relevant questions that "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence."[77] Williams' suicide attempt had no bearing on whether it was more probable or less probable that Clausen escaped from prison, stole a vehicle, and operated the vehicle to escape arrest. Because this line of questioning would have been inadmissible, the record establishes that Clausen was not prejudiced.

### (i) Preservation of Motions to Suppress

Clausen claims that his trial counsel was ineffective because his counsel failed to preserve his motions to suppress by objecting at trial to the introduction of the photographic lineup. However, as discussed earlier, Clausen misstates the record. Clausen's motion to suppress evidence of the photographic lineup was sustained, and no evidence of a photographic lineup was presented at trial. This claim has no merit.

Furthermore, Clausen also claims that his trial counsel was ineffective because his counsel failed to preserve his motions to suppress by objecting at trial to the introduction of Clausen's statements made to investigators after he was arrested. Clausen filed motions to suppress his statements made during his postarrest interview because investigators did not read him his *Miranda* rights until around 15 minutes into

---

[77] Neb. Rev. Stat. § 27-401 (Reissue 2016). See, also, *Devers, supra* note 2.

a series of interviews. The court overruled Clausen's motion to suppress evidence of the statements made to investigators and allowed redacted portions of the interview to be played at trial.

The record shows that Clausen was not prejudiced by his counsel's failure to preserve his motion to suppress by objecting at trial. Law enforcement interviewed Clausen three times. In the first interview, State Patrol investigators did not read Clausen his *Miranda* rights for the first 15 minutes of the interview. However, the investigators did not elicit any incriminating information from Clausen until after investigators read him his *Miranda* rights. The pre-*Miranda* discussion focused on Clausen's previous criminal history, his time in solitary confinement, and the potential effect of Clausen's cooperating with the investigation. At the start of the final two interviews, investigators read Clausen his *Miranda* rights and he signed a *Miranda* rights waiver form before the interview began. As Clausen's *Miranda* rights were not violated, no prejudice resulted from his trial counsel's inaction.

### (j) Failure to Request No-Inference Jury Instruction

Finally, Clausen argues, but fails to assign, that trial counsel was ineffective for not requesting a no-inference jury instruction. Although we decline to reach the merits of this claim because it was not assigned as error, the record shows that Clausen suffered no prejudice. As we discussed earlier, the court did not err in refusing the pattern jury instruction.[78]

### VI. CONCLUSION

Clausen fails to show that the trial court erred or abused its discretion in its rulings. The court correctly excluded Dixon's and Buckner's inadmissible testimonies. Clausen's failure to follow the court's instructions at trial led to his testimony being stricken and disregarded by the jury, thereby forfeiting

---

[78] See *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016).

his right to a no-inference jury instruction. None of the errors that Clausen assigned qualified as structural errors, nor was he deprived of his right to present a defense. Clausen's sentences were not excessive. Finally, his claims of ineffective assistance of trial counsel lack merit. We affirm the judgment of the district court.

AFFIRMED.

FREUDENBERG, J., not participating.

MILLER-LERMAN, J., concurring.

This was an imperfect trial. The testimonies of three defense witnesses were stricken in their entirety. These witnesses were the defendant Clausen, the coperpetrator Dixon, and an additional witness who would have supported Clausen's theory of duress. Flawed though it was, I cannot say the trial suffered structural error warranting reversal. Accordingly, notwithstanding my remarks regarding the constitutional dimension of exclusion of testimony generally and that of Dixon in particular, I concur.

*Jurisprudential Clarification.*

It has been observed that "[s]triking the testimony of a witness is a drastic remedy. It is not to be lightly done. . . . Striking all of the testimony of the witness may be the only appropriate remedy when refusal to answer the questions of the cross-examiner frustrates the purpose of the process." *Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir. 1988). In the instant case, Clausen's remarks did in fact frustrate the process and striking his testimony in its entirety made sense. However, not every refusal to cooperate on cross-examination warrants striking a witness' testimony.

In *United States v. Cardillo*, 316 F.2d 606, 613 (2d Cir. 1963), the Second Circuit recognized this measured approach, and I am in agreement with the majority opinion which adopts the three category framework of the *Cardillo* opinion. *Cardillo* stated:

[Not] every refusal to answer by a witness, claiming his constitutional right against self-incrimination, requires the striking of his testimony or a part thereof. There would appear to be at least three categories to be considered. The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice. The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose. As to the first and second categories suggested, whether all or a part of the testimony should be stricken, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances.

316 F.2d at 613.

The witness who invoked the Fifth Amendment on cross-examination in *Cardillo* was a government witness, so the *Cardillo* framework needs to be applied with some caution where the witness who invokes the Fifth Amendment privilege on cross-examination, as in the instant case, has been called by the defendant. This is so, because different rights are at stake. An opinion from a case where a defense witness invoked the Fifth Amendment on cross-examination in which Chief Judge Garland and then-Judge Kavanaugh joined, makes this point, wherein it stated: "The potential prejudice to the government from preventing its cross examination of [a defense witness], unlike the prejudice to the defendants in *Cardillo* [seeking to cross-examine a government witness], has no constitutional dimension." *U.S. v. Crews*, 856 F.3d 91, 99 (D.C. Cir. 2017).

Elsewhere, it has been observed:

*Cardillo* and cases like it do not address the tension inherent, when the witness is defendant's, between the

> prosecution's need to cross-examine and the defendant's right to call witnesses on her own behalf. The right to present witnesses "has long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). The compulsory process clause of the Sixth Amendment also supports the same right. *Taylor v. Illinois*, 484 U.S. 400, 409, 108 S.Ct. 646, 652, 98 L.Ed.2d 798 (1988).

*Denham v. Deeds*, 954 F.2d 1501, 1503-04 (9th Cir. 1992). A trial court must safeguard to the extent possible a criminal defendant's right to present his or her story. *Id*.

It has been stated: "The key question is whether the defendant's right to present witnesses can be protected without frustrating the government's interest in effective cross-examination." *U.S. v. Negrete-Gonzales*, 966 F.2d 1277, 1280 (9th Cir. 1992). Based on constitutional imperatives and the authority of *Crews* and similar jurisprudence, to the extent the opinion of the court in this case suggests that the State's or government's right to examine a defense witness who has invoked the Fifth Amendment on cross-examination is the constitutional equivalent of the right at stake of the criminal defendant, I respectfully disagree.

*Striking All or Partial Testimony of Dixon.*

The thrust of the majority opinion is that Dixon's refusal to identify who supplied the drugs and from whom he obtained the phone to set up the crimes as charged was testimony in the first *Cardillo* category, i.e., "so closely related to the commission of the crime that the entire testimony of the witness should be stricken." *United States v. Cardillo*, 316 F.2d 606, 613 (2d Cir. 1963). I respectfully disagree; instead, I believe the "subject matter of the testimony was connected solely with one phase of the case" involving steps in the preparation for the crimes which warranted a "partial strik[e]." *Id*.

The crimes charged were escape, theft of a vehicle by unlawful taking, and operating a vehicle to avoid arrest. At his deposition, Dixon stated he put a knife to Clausen's neck

in the bathroom and told him he was going to help with the escape, whether he wanted to or not, and threatened the lives of Clausen and his family. Contrary to the opinion of the court, I believe Dixon offered details of how he planned the escape and the State's interest in prosecuting Clausen was not frustrated by Dixon's unwillingness to name names. When asked from whom he got the phone to set up the crimes, Dixon said he would not answer. Dixon said he paid for the phone. When asked how he paid for the phone, he said he had "a lot of guards in my pocket" from whom he obtained drugs with which to obtain the phone.

During his deposition and his appearance before the district court, Dixon described how he and Clausen escaped in a laundry truck, cut open the roof, and then stole a pickup, which Dixon drove during the pursuit by police. These details and admissions would have favored the State. And Dixon's testimony, if it had been permitted, could have given Clausen some advantage in his attempt to raise doubt with the jury as to his guilt as to certain of the counts. In my view, exclusion of the entirety of Dixon's proposed testimony, because of his refusal to name names in connection with the preparatory phase, diminished the integrity of the trial.

I am aware of cases where a witness denied that the defendant was the source of drugs, but on cross-examination refused to name the source, and the appellate court concluded the witness' testimony was properly stricken. E.g., *U.S. v. McKneely*, 69 F.3d 1067 (10th Cir. 1995). However, in *McKneely*, "the identity of the source was central to the issue of defendant's guilt or innocence." 69 F.3d at 1076. The instant case is more similar to *U.S. v. Negrete-Gonzales, supra*, where the appellate court concluded it was improper to strike the testimony of a witness who refused to identify her source of cocaine on cross-examination where neither defendant was charged with supplying cocaine. The instant case is not a drug case, and the identities of the source of the drugs and phone were not central. Accordingly, in my view, Dixon's refusal to name

the source of the drugs and phone did not warrant striking the entirety of his testimony.

Having concluded that the refusal of defense witness Dixon to answer certain questions on cross-examination falls into the second *Cardillo* category, it is necessary for me to determine if partial striking was feasible. In *U.S. v. Crews*, 845 F.3d 91, 101 (D.C. Cir. 2017), the appellate court was unable to ascertain whether the witness had asserted her Fifth Amendment privilege "only with respect to certain, limited questions," and therefore, the trial court could not be faulted for excluding all her testimony. Here, however, Dixon was available to provide an abundance of information, not all of it favorable to Clausen, and his refusal was clearly limited to the identity of the sources of the drugs and phone. And although the district court suggested that Dixon's refusal only to identify sources might be characterized as an assertion of his Fifth Amendment privilege, that suggestion is curious where he had already resolved his case arising from the escape. In my view, given the record, striking all of Dixon's testimony on the basis that he asserted the Fifth Amendment was "drastic." *Lawson v. Murray*, 837 F.3d 653, 656 (4th Cir. 1988).

It has been observed that "[e]ven when the witness refuses to answer questions relevant to matters at issue, striking only portions of the testimony may be the more reasonable remedy . . . ." *Id*. In this case, in my view, a partial striking of Dixon's testimony would have been the better course; however, I recognize that the district court was not asked to do so. Under similar circumstances, in *Crews*, the appellate court assumed that "the district court had viable alternatives, but [the defendant] did not suggest any at trial. The court did not plainly err by failing to consider them *sua sponte*." 856 F.3d at 100-01. Similarly, on the record before us, not having been presented with the alternative of partially striking Dixon's proposed testimony, I cannot find that the district court plainly erred when it chose to strike Dixon's testimony in its entirety.

For the foregoing reasons, I concur.