Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/19/2022 08:08 AM CDT

State of Nebraska, appellee, v.
Nicholas Garcia, appellant.

___ N.W.2d ___

Filed May 27, 2022.    No. S-21-361.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

3. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

4. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and, if taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

5. **____: ____.** A jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous.

Appeal from the District Court for Morrill County: Andrea D. Miller, Judge. Affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## I. INTRODUCTION

Following a jury trial, Nicholas Garcia was found guilty of first degree sexual assault and sentenced to 2 to 4 years' imprisonment. On appeal, Garcia argues that there was insufficient evidence to support his conviction because the definition of sexual penetration does not include those actions for which he was charged and because the State did not prove lack of consent or, alternatively, that Garcia "'knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of [the victim's] conduct.'"[1] We affirm.

## II. FACTUAL BACKGROUND

On July 18, 2019, P.H. called law enforcement to report that he had been sexually assaulted by Garcia. According to P.H., he and his girlfriend worked at a restaurant with Garcia, who was also the couple's neighbor. On July 17, P.H. made plans to go to Garcia's home after P.H.'s shift at the restaurant. P.H. finished work at approximately 11 p.m., had a drink at the restaurant bar, went home with his girlfriend, and then together they went to Garcia's home. Garcia was in the living area of the home; Garcia's boyfriend was home, but was asleep elsewhere in the home.

Garcia and P.H. had a few beers, and P.H. had a few drinks of rum from his flask. They also apparently smoked some marijuana. P.H.'s girlfriend was not drinking that evening.

---

[1] Brief for appellant at 8, quoting Neb. Rev. Stat. § 28-319(1) (Reissue 2016).

Around 1:30 a.m., P.H. indicated that he was tired and wanted to go home. While waiting for his girlfriend and Garcia to finish their conversation, P.H. fell asleep. He testified that he was fully dressed when he fell asleep, including jeans, shorts, underwear, a sweatshirt, and a shirt. P.H.'s girlfriend attempted to wake him, but was unsuccessful. She went home to get a blanket for P.H., then came back to Garcia's home, wrapped the blanket around P.H., and left to sleep at their home. P.H.'s girlfriend testified that P.H. was fully dressed when she left Garcia's home.

P.H. testified that when he awoke around 5 a.m., he realized that his penis was in Garcia's mouth. He then realized that he was also completely naked and lying on a different couch than he had been on when he had fallen asleep. P.H. was upset and grabbed his clothing, dressed, and went home. When he got home, P.H. told his girlfriend what had happened and then called police to report the incident.

Garcia was interviewed. During the interview, Garcia first denied P.H.'s allegations, then suggested that maybe he had performed fellatio on P.H. thinking it was Garcia's boyfriend. Eventually, Garcia admitted that he had performed fellatio on P.H.

Garcia was later charged with first degree sexual assault, tried, convicted, and sentenced to 2 to 4 years' imprisonment. He appeals.

## III. ASSIGNMENTS OF ERROR

Garcia assigns that the district court erred in (1) finding sufficient evidence to find him guilty and (2) instructing the jury as to the definition of sexual penetration.

## IV. STANDARD OF REVIEW

[1] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the

evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

[2] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[3]

## V. ANALYSIS

Garcia assigns on appeal that the district court erred in finding sufficient evidence to support his conviction and in failing to properly instruct the jury.

Garcia was charged with a violation of § 28-319(1), which provides:

> Any person who subjects another person to sexual penetration (a) without the consent of the victim, (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree.

### 1. Sufficiency of Evidence

Garcia argues that (1) there was insufficient evidence of penetration and (2) the State failed to prove either that P.H. did not consent or that P.H. was mentally or physically incapable of resisting or appraising the nature of his conduct. These assertions are without merit.

### (a) Sexual Penetration

Garcia first argues that the State did not prove that he subjected P.H. to sexual penetration. The basis of this argument is not a factual dispute, but is a legal one—Garcia

---

[2] *State v. Davis*, 310 Neb. 865, 969 N.W.2d 861 (2022).

[3] *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020).

concedes that he performed fellatio on P.H., but asserts that such an act is not prohibited by the statute.

The basis of Garcia's argument on appeal is, first, that the term "sexual penetration" is statutorily defined as "any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body."[4] Because P.H.'s penis was placed in Garcia's mouth, rather than an act of penetration by Garcia into P.H.'s "genital or anal openings," Garcia contends that the definition was not met. We disagree.

In examining the language of the definition of "sexual penetration," we observe that the language upon which Garcia primarily relies is a catchall for those acts of penetration that do not fit within the specific acts listed at the beginning of the definition, a list which includes "fellatio."[5] And we have defined "fellatio" "'as the practice of obtaining sexual satisfaction by'"[6] "'oral stimulation of the penis,'"[7] which, by our review of the record, is what occurred in this case.

We find no merit to Garcia's other suggestion on appeal—that what occurred in this case was not fellatio for purposes of the statute—because this court has previously found that only the act of a victim's being forced to fellate a defendant was penetration for purposes of the statute.[8] In support of this contention, Garcia directs us to *State v. Gonzales*.[9] In *Gonzales*, the court was presented with a defendant who fellated the victim and also forced the victim to perform fellatio on him (the defendant). In our opinion, we defined fellatio and concluded it was sexual penetration for purposes of the statute, but in applying those findings to the defendant

---

[4] See Neb. Rev. Stat. § 28-318(6) (Reissue 2016).

[5] See *id.*

[6] *State v. Gonzales*, 219 Neb. 846, 849, 366 N.W.2d 775, 778 (1985).

[7] *Id.* at 849, 366 N.W.2d at 777.

[8] See *State v. Gonzales, supra* note 6.

[9] *Id.*

concluded only that the defendant was guilty because the evidence showed that he had forced the victim to perform fellatio on him.

But Garcia reads too much into the court's failure to extend its holding. The *Gonzales* court did not explicitly find that one scenario was fellatio and the other not. Rather, the court first considered the situation of the victim's being forced to perform fellatio, and the court concluded that it was penetration and a violation of the applicable statute. The court did not then need to also determine whether the opposite was true because it had determined that there was sufficient evidence to support the conviction.

Garcia does not point us to authority that explicitly holds that a defendant's fellating a victim does not meet the definition of penetration, nor has our review found any. The statutory definition of "sexual penetration" is not limited to only cases of the victim's fellating a defendant, nor can we conceive of any rationale for making such a distinction. There is no merit to Garcia's assignment of error regarding the sufficiency of the evidence regarding penetration.

### (b) Consent and Force

Garcia next contends that the record showed that at no point did P.H. say no, and P.H.'s actions in pushing Garcia's head down during the act amounted to nonverbal consent. As evidence that P.H. was mentally and physically capable of resisting or appraising the nature of his conduct and therefore was able to give consent, Garcia also points to testimony by P.H. and his girlfriend that although P.H. had been drinking, he was not drunk.

Initially, we note that in response to questioning at oral argument, Garcia asserted that the jury must be unanimous in its determination under § 28-319(1). In other words, Garcia suggested that the jury must collectively conclude either that P.H. did not consent or that Garcia knew or should have known that P.H. was "mentally or physically incapable of

appraising the nature of his . . . conduct."[10] But we conclude that Garcia has waived any argument he might have on this issue by failing to raise it below or in his brief on appeal.[11] As such, we need not address it.

We instead limit our review to whether the evidence was sufficient when viewed in a light most favorable to the State. And considering the evidence in that light, it is clear that the evidence was sufficient to support the jury's finding that P.H. did not consent. First, P.H. testified that he did not consent. Moreover, P.H. testified that he was asleep and did not awaken until he had ejaculated. It was at that point, according to P.H.'s testimony, that he realized what was occurring and that it was Garcia—and not his girlfriend—fellating him. He then objected to the act and left Garcia's home.

Additionally, while there was testimony that P.H. was a regular drinker and did not think he was drunk, there was also evidence that P.H. might have been more inebriated than he would admit to. P.H. testified that he had drunk alcohol first at work, then later at Garcia's home, and that he had also smoked marijuana at Garcia's home. There was also evidence that P.H. had fallen asleep to the point that he could not be woken, as well as testimony that P.H. had urinated on himself, removed his clothing, and switched locations from one couch to another within Garcia's home, all without any recollection of what had occurred. Thus, there was evidence to support a finding that Garcia knew or should have known that P.H. was in no position to appraise the nature of his conduct.

When considered in a light most favorable to the State, there was sufficient evidence to find a lack of consent or, alternatively, that Garcia knew or should have known that P.H. was unable to appraise the nature of his conduct. There is no merit to Garcia's assignment of error to the contrary.

---

[10] See § 28-319(1).

[11] See *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012).

## 2. Jury Instructions

Garcia next assigns that the district court erred in not instructing the jury with his proposed definition of penetration. We note that Garcia does not assign or sufficiently argue on appeal that the district court erred in the instruction given to the jury regarding the definition of penetration.

[3-5] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[12] All the jury instructions must be read together, and, if taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[13] A jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous.[14]

On the other hand, Garcia's requested instruction would have instructed the jury that "[f]ellatio is where the defendant has engaged the victim's mouth with the defendant's penis." This language is in line with the language from *Gonzales*, which Garcia relies upon to show that the act in this case did not meet the definition of "sexual penetration."[15] But, as noted above, this is not a correct statement of the holding in *Gonzales*, nor of the law more generally.

Meanwhile, the jury was instructed that "[p]enetration includes any contact, however slight, between the defendant's sex organ and the victim's mouth or tongue or between the victim's sex organ and the defendant's mouth or tongue."

---

[12] *State v. Clausen, supra* note 3.

[13] *Id.*

[14] *Id.*

[15] See *State v. Gonzales, supra* note 6.

We have noted that if there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give this instruction to the jury in a criminal case.[16] A review of this instruction shows that it is from the Nebraska Jury Instructions[17] and is consistent with the language of the statutory definition of "sexual penetration," while still extrapolating the meaning of certain terms which have specific meanings that might not otherwise be known to a member of a jury (i.e., cunnilingus and fellatio).

There was no error in the court's refusal to give Garcia's proposed instruction of "penetration" or in the court's actual instruction to the jury of the term "penetration." This assignment of error is without merit.

## VI. CONCLUSION

We affirm the decision of the district court.

Affirmed.

---

[16] *State v. Lavalleur*, 289 Neb. 102, 853 N.W.2d 203 (2014).

[17] See NJI2d Crim. 4.6.