IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. RELIFORD


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ALAN E. RELIFORD, APPELLANT.


Filed December 27, 2022.    No. A-22-213.


Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Lori A. Hoetger, and Brian D. Craig for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.


MOORE, RIEDMANN, and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

Alan E. Reliford appeals from his conviction in the district court for Douglas County of first degree assault and robbery. On appeal, he assigns error to the court's refusal to give certain jury instructions, the sufficiency of the evidence to support his convictions, and the sentences imposed by the court. Finding no error, we affirm.

## II. STATEMENT OF FACTS

### 1. CHARGES

The charges in this case arise out of an incident that occurred outside of an apartment complex in Omaha, Nebraska, on August 4, 2020. On June 30, 2021, the State filed an information in the district court, charging Reliford with robbery in violation of Neb. Rev. Stat. § 28-324

(Reissue 2016), a Class II felony, and first degree assault, in violation of Neb. Rev. Stat. § 28-308 (Reissue 2016), also a Class II felony. The State identified the victim of both crimes as Corey Baltzell.

## 2. TRIAL

A jury trial was held December 13-15, 2021. The State presented testimony from an emergency room doctor who treated Baltzell after the assault, police officers who investigated the incident, and Baltzell. The district court also received various exhibits offered by the State, including a surveillance video from the apartment complex, still photographs pulled from the video, and multiple photographs depicting various aspects of the crime scene and showing Reliford's injuries. One of the apartment complex residents testified on Reliford's behalf.

### (a) State's Evidence

The evidence shows that on August 4, 2020, at approximately 9:30 p.m., Omaha police and medical personnel were dispatched to an apartment complex in Omaha in response to a call about a man believed to be dead. Police arrived soon after to find the victim, later identified as Baltzell, lying essentially motionless on the ground in a patio area. Baltzell was alive and breathing but unresponsive. He had visible injuries to his face, and there was a pool of blood around his head. Police looked through Baltzell's wallet and cell phone, and body camera footage from the scene indicate two text messages on Baltzell's phone. One message sent at 4:28 p.m. (read by medic on the body camera footage), stated something like, "Just hurt my neck in a car accident." The date of this message is not clear from the record. Another text message from 7:30 p.m. on the day in question, stated "911" and "I need you." Police found various other items on the ground near Baltzell, including a shoe, a pair of glasses, and a watch.

While police were processing the scene, Baltzell was transported to the hospital and taken to the emergency room on a "Code 3 status," which means there is the potential for or actual serious bodily harm, major bleeding, open fractures, or vital sign abnormalities, among other things. Dr. Eric Ernest, one of Baltzell's treating doctors, testified that Baltzell was making some movements when he arrived at the hospital, but he was not speaking coherently or making any purposeful movements. Ernest testified that medical personnel assigned Baltzell "a Glasgow Coma score of 8," which on a 15-point scale (with 3 being the lowest possible score and 15 the highest) indicates moderate to significant neurological injury. Baltzell was intubated and sedated to stabilize him while he was treated.

Baltzell's medical examination revealed several fresh injuries, including swelling and bruising on his face, especially around the nose and eyes; a contusion on his scalp; a subdural hematoma on the upper part of his head; and multiple nasal fractures, suggesting "a significant force was applied or presented to his face." Baltzell did not have any bleeding in the brain or a skull fracture, but his jawbone was displaced from his skull, and he had a "teardrop" fracture on his cervical spine (considered to be a "new fracture"). Other spinal fractures or deformities shown by imaging tests were "age indeterminate" and "[f]avored chronic," meaning doctors could not determine when they occurred. The medical examination also revealed possible "ligamentous damage," to the ligaments that hold the spinal canal in place, an injury that could be caused by a person being in a car accident. A drug screen showed the presence of marijuana (presumably

consumed prior to Baltzell's arrival at the hospital) and benzodiazepine (possibly from the drugs administered in the emergency room). A blood alcohol test showed that Baltzell had a blood alcohol concentration of .253.

Baltzell was released from the hospital on August 5, and was sent home in a cervical neck collar. His neurological exam that morning was noted as being "entirely normal." Baltzell's injuries did not require surgery or followup treatments, other than use of the neck collar, but Ernest testified that Baltzell's injuries were very serious. As noted above, Ernest testified that Baltzell's nasal fractures were caused by "significant force," and he testified that Baltzell's injuries in combination created a risk of death or serious injury, including traumatic brain injury. Ernest testified that a traumatic brain injury can result in ongoing symptoms of persistent nausea, headaches, vomiting, visual problems, memory issues, and trouble with cognition. While the imaging tests performed at the hospital did not reveal internal brain injuries, Ernest explained that these scans will not necessarily show the full extent of a person's injuries, typically only revealing "structural abnormalities," and that other internal injuries may manifest later or in other ways. Ernest opined that Baltzell's injuries could have been caused by being stomped on the head and that such stomping would pose a risk of skull or neck fracture, brain injury, or death. Ernest also testified that if Baltzell had not been found and treated as quickly as he was, there would have been the risk of breathing issues and possible cardiac arrest.

One of the Omaha police officers who investigated the incident spoke with Baltzell, but Baltzell did not recall anything about how he had received his injuries. The officer also contacted the manager of the apartment complex where the incident occurred and obtained surveillance video containing footage of the incident. The police then put out a bulletin with still photographs taken from the video through which Reliford was identified as the suspect committing the assault.

Another police officer who had had contact with Reliford prior to the August 2020 incident confirmed at trial that Reliford was the individual shown attacking Baltzell in the surveillance video. During the course of the investigation, with assistance from the apartment complex manager, that officer was able to identify another individual in the video as Reliford's brother.

The surveillance video was played for the jury. The video showed that at 9:35 p.m., Baltzell approached a group of four individuals (one woman and three men) in a courtyard area of the apartment complex. He does not appear to have any injuries at that point. Baltzell conversed with the group and one of the men (not Reliford or his brother) pointed and laughed at Baltzell, who turned around and appeared to zip up his pants. Baltzell turned back toward the group, raising his hands near his head, and walked toward Reliford. At that point, Reliford set down his drink and cigarette and began hitting Baltzell in the face, striking him multiple times. Baltzell fell to the ground, and Reliford continued his physical contact on Baltzell, kicking and then hitting his head multiple times. Reliford then leaned over Baltzell, appearing to remove a watch from Baltzell's wrist, after which he stomped on Baltzell's head multiple times, and Baltzell went limp. Reliford walked back to his drink and cigarette, appearing to throw the watch he took from Baltzell behind him. Then Reliford and the rest of the group left, leaving Baltzell lying on the pavement.

Baltzell testified about his limited recollection of what happened on August 4, 2020. Baltzell had "messed up [his] car" about a week earlier, so on the day in question, he was driving a rental vehicle while his car was being repaired. He remembered going to a gas station around 5 or 6 p.m. and purchasing some alcohol. Baltzell did not remember why he was at the apartment

complex that night. His only previous contact with that location had been when he gave a coworker a ride home on a few occasions. He did not remember speaking with the group of people shown in the surveillance video, did not recognize them upon seeing the video, and did not recall the assault itself. Baltzell testified that he woke up in the hospital with no recollection of what happened beyond his purchase of alcohol at the gas station. Baltzell identified a picture of the watch found at the scene as depicting his watch. He also confirmed that the shoe and eyeglasses shown in photographs of the scene were his and that the cell phone shown was "[p]robably" his. Baltzell did not need surgery for any of his injuries. He had to wear a neck brace for 4 months following the assault, during which time he was unable to drive, but he had since fully recovered. He denied having ever been treated for a neck injury prior to the August 4 incident.

Following Baltzell's testimony, the State rested. Reliford moved for a directed verdict, which the district court denied.

### (b) Reliford's Evidence

Reliford's only witness was Christine Snyder, a resident of the apartment complex where the assault occurred. On the evening in question, Snyder was outside on one of the apartment complex's patios with her daughter and Reliford's brother (also a resident of the apartment complex). Snyder testified that around 8 or 8:30 p.m., an individual later identified as Baltzell approached the patio railing and started making vulgar sexual gestures toward her. He left after she yelled at him. Later that evening, around 9:30 p.m., Snyder, Reliford, Reliford's brother, and another apartment complex resident were hanging out on a different patio. The group shared "[m]aybe three bowls" of marijuana, and Snyder had consumed "maybe three sips" of beer before the incident. At some point, Baltzell walked up again. Snyder described him as being "belligerently drunk," "swaying back and forth," and slurring his words when he spoke. There was an exchange of profanities and racial slurs between Reliford and his brother and Baltzell that began with Reliford and his brother inquiring who the individual was and why he was approaching their group and ended with Baltzell calling Reliford "the f-ing N word." According to Snyder, Baltzell was "being slightly more aggressive" at that point and "leaning in like he was going to punch [Reliford]." She testified that Reliford set down his drink and punched Baltzell. Snyder indicated that this sequence of events "happened so fast." "When everything ended," Snyder verified that Baltzell was still breathing, and then she went back inside to try to find her phone. By the time she located her phone, the police had already arrived. Snyder testified that she felt threatened by Baltzell, based on his comments and the fact that he had his hands up as he approached the group, but she acknowledged that Baltzell "never swung" at Reliford or anyone else in the group.

Following Snyder's testimony, Reliford rested. Reliford's attorney made a motion for a directed verdict, which the district court denied.

### (c) Jury Instruction Conference

During the jury instruction conference, Reliford proposed the following self-defense instruction:

> [Reliford] acted in self[-]defense if:
> 1. [Baltzell] used or threatened force against [Reliford]; and

2. Under the circumstances as they existed at the time, [Reliford] reasonably believed that the force he used against [Baltzell] was immediately necessary to protect him against injury.

The fact that [Reliford] may have been wrong in estimating the danger does not matter so long as there was a reasonable basis for what he believed and he acted reasonably in response to that belief.

[Reliford] is not required to prove that he acted in self[-]defense. It is up to the State to prove that he did not.

Also, with respect to "defense of another," he proposed this instruction:

[Reliford] acted in defense of another person if:

1. [Reliford] reasonably believed that [Baltzell] used or threatened force against [Snyder]; and

2. Under the circumstances as they existed at the time, [Reliford] reasonably believed the force [he] used against [Baltzell] was immediately necessary to protect [Snyder] against any such force used or threatened by [Baltzell.]

The fact that [Reliford] may have been wrong in estimating the danger to [Snyder] does not matter so long as there was a reasonable basis for what [Reliford] believed and he acted reasonably in response to that belief.

Additionally, Reliford proposed the following instruction with respect to the lesser-included offense of third degree assault:

Depending on the evidence, you may return one of several possible verdicts. You may find [Reliford]:

(1) Guilty of Assault in the First Degree; or

(2) Guilty of Assault in the Third Degree; or

(3) Not guilty.

The elements of the crime of Assault in the First Degree, are:

1. That [Reliford], on or about August 4, 2020, caused serious bodily injury to . . . Baltzell;

2. That [Reliford] did so knowingly and intentionally; and

3. That [Reliford] did so in Douglas County, Nebraska.

The elements of the crime of Assault in the Third Degree, are:

1. That [Reliford], on or about August 4, 2020, caused bodily injury to . . . Baltzell;

2. That [Reliford] did so knowingly and intentionally; and

3. That [Reliford] did so in Douglas County, Nebraska.

You must separately consider in the following order the crimes of Assault in the First Degree and Assault in the Third Degree. For the crime Assault in the First Degree you must decide whether the [S]tate proved each element beyond a reasonable doubt. If the [S]tate did so prove each element, then you must find [Reliford] guilty of Assault in the First Degree and stop. If you find that the [S]tate did not so prove, then you must proceed to consider the next crime in the list, the crime of Assault in the Third Degree. You must

proceed in this fashion to consider each of the crimes in sequence until you find [Reliford] guilty of one of the crimes or find him not guilty of all of them.

The district court refused Reliford's proposed instructions, giving an instruction on first degree assault that did not include the lesser-included offense of third degree assault and stating that it did not see a need for a self-defense or defense of others instruction.

### (d) Verdict

The jury found Reliford guilty of both first degree assault and robbery. The district court accepted the jury's verdict, scheduled sentencing, and ordered a presentence investigation report (PSR).

### 3. SENTENCING

At the sentencing hearing on March 9, 2022, Reliford's attorney indicated she had had an opportunity to review the PSR and discuss it with Reliford. She noted a correction to the amount of credit for time served to which Reliford was entitled, and the district court accepted a letter of support for Reliford and his attorney's sentencing memorandum as additions to the PSR. In her arguments to the court, Reliford's attorney noted that Baltzell had physically healed from his injuries, and she asked the court to consider, among other things, Reliford's acknowledged problem with anger, his "rough upbringing," the fact that he had been a victim of assault, and his support of and by family members. Reliford also spoke to the court, expressing sorrow and regret for his actions.

In the State's arguments, the prosecutor noted "the multiple lockdowns [Reliford has] had since he's been in custody." She also noted "the seriousness of this case," the evidence as reflected in the security video of the incident, and asked the district court to impose a substantial sentence.

Before sentencing Reliford, the district court noted its consideration of the relevant factors. The court then imposed a sentence of 14 to 18 years' imprisonment on each count, to run concurrently, giving him credit for 324 days of time served. Reliford subsequently perfect his appeal to this court.

### III. ASSIGNMENTS OF ERROR

Reliford asserts that (1) the district court erred in refusing to instruct the jury on the affirmative defense of self-defense and the lesser-included offense of third degree assault, (2) the evidence was insufficient to sustain his convictions for first degree assault and robbery, and (3) the court abused its discretion by imposing an excessive sentence.

### IV. STANDARD OF REVIEW

Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022).

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of

witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Greer, supra*. A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. JURY INSTRUCTIONS

Reliford asserts that the district court erred in refusing to instruct the jury on the affirmative defense of self-defense and the lesser-included offense of third degree assault. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Garcia*, 311 Neb. 648, 974 N.W.2d 305 (2022). All the jury instructions must be read together, and, if taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Id.*

### (a) Self-Defense

To successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force and the force used in defense must be immediately necessary and justified under the circumstances. *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020). See, also, Neb. Rev. Stat. § 28-1409 (Reissue 2016) (concerning use of force in self-protection). If a defendant has unjustifiably placed himself or herself in harm's way, a court may properly find that such facts do not support a lawful claim of self-defense. *State v. Case, supra*.

A trial court is required to give a self-defense instruction where there is any evidence in support of a legally cognizable theory of self-defense. *Id.* It is only when the evidence does not support a legally cognizable claim of self-defense or the evidence is so lacking in probative value, so as to constitute a failure of proof, that a trial court may properly refuse to instruct a jury on a defendant's theory of self-defense. *Id.*

In this case, the trial evidence did not support a claim of self-defense. The surveillance video shows Baltzell walking up to the group and talking with them prior to the assault. The only potentially threatening action from Baltzell occurred when he approached Reliford, raising his arms near his head after zipping his pants. The evidence does not show Baltzell making physical contact with Reliford or anyone else in the group, and Reliford turned away from Baltzell, setting down his drink and cigarette, before he turned back around and began to strike Baltzell in the face. Reliford could have walked away or retreated if he felt threatened. See § 28-1409(4)(b) (spelling

out duty to retreat to avoid necessity of using deadly force, except under certain circumstances in one's dwelling or place of work).

Further, even if Reliford's initial use of force had been justified, the evidence does not show any justification for his continued use of force once Baltzell fell to the ground. The video shows Baltzell dropping to the ground after Reliford's initial hits to his face. Baltzell moved very little after falling. Reliford, however, continued the physical contact, kicking and hitting Baltzell multiple times before removing Baltzell's watch and stomping on his head multiple times, at which point Baltzell went limp. A claim of self-defense was not available to Reliford based upon this conduct. See *State v. Abdulkadir*, 293 Neb. 560, 878 N.W.2d 390 (2016) (holding, in case involving deadly force, that defendant was not justified in continued use of force once victim fell helplessly to floor, even though victim was initial aggressor).

Here, the district court found that the evidence did not warrant giving Reliford's proposed self-defense instructions, noting with respect to the defense of others portion of Reliford's proposed instructions that the evidence showed Snyder "just sat there and watched." We agree. Because the evidence did not support a claim of self-defense in this case, the court did not err in refusing to give the requested instruction.

### (b) Lesser-Included Offense of Third Degree Assault

A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022). It is not prejudicial error to fail to instruct upon a lesser-included offense when the evidence entirely fails to show an offense of a lesser degree than that charged in the information. *State v. McKimmey*, 10 Neb. App. 595, 634 N.W.2d 817 (2001).

A person commits the offense of assault in the first degree if he or she "intentionally or knowingly causes serious bodily injury to another person." § 28-308(1). "Serious bodily injury" is statutorily defined to mean "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." Neb. Rev. Stat. § 28-109(21) (Reissue 2016).

A person commits the offense of assault in the third degree if he or she: (a) "[i]ntentionally, knowingly, or recklessly causes bodily injury to another person;" or (b) "[t]hreatens another in a menacing manner." Neb. Rev. Stat. § 28-310(1) (Reissue 2016). "Bodily injury" is defined to mean "physical pain, illness, or any impairment of physical condition." § 28-109(4).

Nebraska case law shows that third degree assault is a lesser-included offense of first degree assault. See *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). The parties in this case disagree, however, on whether the evidence warranted an instruction on the lesser-included offense.

Here, the record shows that Reliford caused serious bodily injury to Baltzell. When Baltzell arrived at the hospital, he was not speaking coherently or making any purposeful movements. His score on Glasgow Coma assessment indicated moderate to significant neurological injury. Fresh injuries revealed upon his medical examination included facial swelling and bruising, a scalp

contusion, a subdural hematoma on the upper part of his head, multiple nasal fractures, jawbone displacement, and a "teardrop" fracture on his upper spine. He also had possible "ligamentous damage" to the ligaments in his spinal canal, although this could have resulted from an earlier car accident. Baltzell had to wear a cervical neck collar for 4 months upon returning home. Although Baltzell did not require surgery, Ernest's testimony confirmed that Baltzell's injuries were quite serious and that the mechanism of injury had posed a risk of death or significant ongoing impairment. Because the evidence establishes that Reliford intentionally or knowingly caused serious bodily to Balztell, there was no rational basis for the jury to conclude otherwise and acquit Reliford of first degree assault. See *State v. Cerros, supra*.

Reliford argues that there was a rational basis to acquit him of first degree assault because the jury could have concluded that he only sustained "bodily injury." He stresses that Baltzell did not require surgery, was not diagnosed with any permanent injuries, and had fully recovered. However, § 28-109(21) does not require that an assault actually cause death, serious permanent disfigurement, or impairment of a part of the body in order to constitute "[s]erious bodily injury" and thus rise to the level of first degree assault under § 28-308(1); rather, the assaultive behavior need only cause a "substantial risk" of such injuries. As noted above, the assault on Baltzell clearly created such a risk. Contrary to Reliford's assertion, Baltzell's lack of permanent injuries did not provide a rational basis for finding that no serious bodily injury occurred and acquitting him of first degree assault. The district court did not err in refusing to give Reliford's proposed jury instruction on third degree assault as a lesser-included offense of first degree assault.

2. Sufficiency of Evidence

Reliford asserts that the evidence was insufficient to sustain his convictions for first degree assault and robbery. We disagree. The evidence was sufficient to sustain his convictions on both counts.

(a) First Degree Assault

As noted above, a person commits first degree assault if he or she intentionally or knowingly causes serious bodily injury to another person, and serious bodily injury is bodily injury involving a substantial risk of death, or substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body. See § 28-308(1) and § 28-109(21). First degree assault is a felony and a general intent crime. See *State v. Sepulveda*, 278 Neb. 972, 775 N.W.2d 40 (2009). The intent required by the assault statutes relates to the act which produces the injury, not to the consequences which result from the assault. See *id.*

The evidence showed that Reliford set down his drink and cigarette before hitting Baltzell multiple times, causing him to fall to the ground. Reliford then proceeded to kick and hit Baltzell multiple additional times, also stomping on his head multiple times. Baltzell suffered significant swelling and bruising to his head and face, multiple nasal fractures, a displaced jaw, and a cervical "teardrop" fracture. The evidence was sufficient for any rational trier of fact to conclude that Reliford intentionally or knowingly caused injury to Baltzell that involved a substantial risk of death, or substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body.

Reliford argues that the evidence does not show that Baltzell's injuries were caused by the assault, noting evidence that Baltzell was in a car wreck about a week prior to the assault and that some of his spinal injuries were classified as "age indeterminate" or "[f]avored chronic." Clearly, the fact that some injuries to Baltzell's spine may have predated the assault does not preclude the reality that many of his injuries were fresh or recent, including the swelling and bruising on his face, the nasal fractures, the jaw displacement, and the spinal "teardrop" fracture. The jury, as the trier of fact, determined that at least some of Baltzell's injuries were caused by the assault, and this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. See *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022).

The evidence viewed and construed most favorably to the State, was sufficient to support Reliford's conviction for first degree assault. This assignment of error fails.

### (b) Robbery

"A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever." § 28-324(1). Although not defined in the robbery statute, "stealing" has commonly been described as taking without right or leave with intent to keep wrongfully. *State v. Burbach*, 20 Neb. App. 157, 821 N.W.2d 215 (2012). The focus of § 28-324 is on the intent to deprive the owner of his or her property permanently, to keep it from him or her. *Id.* The victim has his or her property stolen regardless of whether the thief thereafter uses it for selfish gain, destroys it, abandons it, or gifts it to another. *State v. Barfield*, 272 Neb. 502, 723 N.W.2d 303 (2006), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

Here, the evidence shows that, during the course of the assault, while Baltzell was lying essentially motionless on the pavement, Reliford removed Baltzell's watch from his arm and walked away with it. Reliford argues that because he discarded the watch shortly after taking it, the evidence was insufficient to show his intent to permanently deprive Baltzell of the watch. But, the fact that stolen property is later abandoned does not mean that it was not stolen. See *id*. Whether one charged with theft intended to deprive the owner of the property permanently is to be inferred from the words and acts of the defendant and from the circumstances surrounding the incident. *State v. Lixey*, 238 Neb. 540, 471 N.W.2d 444 (1991). Reliford's intent at the time he took the watch was a matter for the jury, and this court does not determine credibility or reweigh the evidence on appeal. See *State v. Cerros, supra*.

Viewed and construed most favorably to the State, the evidence was sufficient to support Reliford's conviction for robbery. This assignment of error fails.

### 3. EXCESSIVE SENTENCE

Reliford asserts that the district court abused its discretion by imposing an excessive sentence. He was convicted of first degree assault and robbery, both of which are Class II felonies. § 28-308; § 28-324. Class II felonies are punishable by imprisonment for 1 to 50 years, but with no mandatory minimum. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). The court sentenced Reliford concurrent terms of 14 to 18 years' imprisonment. His sentences were within the statutory limits. Reliford argues, however, that the sentences imposed were excessive and that the district court failed to consider his traumatic background and potential for rehabilitation.

- 10 -

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

At the time of the PSR, Reliford was 33 years old. He has a high school education and was not currently employed, although he has had various employments in the past. He has a rather lengthy criminal history, but his longest sentence prior to this case was a 180-day jail sentence. The overall Level of Service/Case Management Inventory placed Reliford in the very high risk category to reoffend. The probation officer who conducted the interview reported that Reliford "did not express remorse for the governing offense," demonstrated "antisocial cognition and a deepening criminal mindset," and that the risk was substantial that he would engage in additional criminal conduct during a period of probation. The probation officer also stated that Reliford "does not appear to have been committed to a sober and crime-free lifestyle and has not been amenable to abiding by programs that would aid in rehabilitation and reduce the risk of further unlawful conduct."

At sentencing, the district court indicated it had considered the relevant factors in this case. The court had received the PSR, including the additions offered by Reliford at the sentencing hearing, and we see no indication that the court considered any inappropriate factors. Upon our review of the record, we can find no abuse of discretion in the sentences imposed.

## VI. CONCLUSION

The district court did not err in refusing to give Reliford's requested jury instructions on the affirmative defense of self-defense and the lesser-included offense of third degree assault. The evidence was sufficient to sustain Reliford's convictions, and the court did not abuse its discretion in sentencing him. Accordingly, we affirm.

AFFIRMED.